UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

NIGHT BOX FILED
JAN 1 4 2003
CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

CASE NO. 01-3631-CIV-MARTINEZ
Magistrate Judge Robert L. Dubé

CITIBANK, N.A., as Trustee,

    Plaintiff,

vs.

HINTON, INC., ROB-HIN, INC.,
HINROB, INC., MARMIJA, INC.,
HINBO, INC., JAMES A. HINTON,
MICHAEL S. HINTON and
LINDA BOYETT,

    Defendants.
_____/

## PLAINTIFF CITIBANK'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Citibank, N.A., as Trustee ("Citibank") submits this reply memorandum in support of its motion for summary judgment. (DE 61).

### I.    INTRODUCTION

Defendants argue that summary judgment is inappropriate because "there are a plethora of disputed factual issues to be decided in this case." (DE 74 at 3). That statement, however, mischaracterizes Rule 56(c) of the Federal Rules of Civil Procedure, which provides, in pertinent part, that summary judgment is appropriate when "there is no genuine issue as to any *material fact*." Fed. R. Civ. P. 56(c). Cf., e.g., Haves v. Miami, 52 F.3d 918, 923 (11th Cir. 1995) (observing that while "[t]he evidence [at bench] certainly creates an issue of fact, . . . that factual dispute is not material for summary judgment purposes"); Knight v. Georgia, 992 F.2d 1541, 1547 (11th Cir. 1993) (commenting that "[t]he alleged factual uncertainties noted by appellee *are not material* and

so pose no obstacle to a grant of summary judgment for appellants") (emphasis added). Significantly, Defendants have not established that there is a disputed issue of *material* fact. As a result, Citibank is entitled to summary judgment.

Moreover, Defendants' arguments are unavailing because the resolution of this case simply turns on the legal construction of the clear and unambiguous terms of the Franchisee Commitment. Defendants were required to use the funds received from the Trust for the express purposes set forth in the Franchisee Commitment. Defendants failed to do so. The Franchisee Commitment makes plain that the Trust is entitled to the return of all sums paid in the event of a default. Defendants did not cure their default. Thus, pursuant to the terms of the Franchisee Commitment, Citibank is entitled to summary judgment.

## II.    MEMORANDUM OF LAW

### 1.    The Franchisee Commitment Agreement is Not Ambiguous

It is settled under Florida law that "'[t]he language of the contract, unless ambiguous, represents the intention of the parties.'" E.g., Robert C. Roy Agency, Inc. v. Sun First Nat'l Bank of Palm Beach, 468 So. 2d 399, 404 (Fla. Dist. Ct. App. 1985) (citation omitted). See also, Burger King Corp. v. Hinton, 203 F. Supp. 2d 1357, 1361-62 (S.D. Fla. 2002) ("It is well established that the clear and unambiguous words of a contract are the best evidence of the intent of the two parties"). It is also settled that "[t]he intent deduced from this objective matter, *not the parties' subjective understandings*, is controlling." Id. (citations omitted) (emphasis added).

Thus, even if true, it is immaterial that "[f]ranchisees throughout the franchise system widely understood that the Coke Fund disbursements could be used for general restaurant operations," as Defendants have alleged here. (DE 74 at 5; see also id. at 7 (alleging "it was widely understood by B[urger King Corporation] franchisees that Coke Fund disbursements could be used for any

operational purpose")). Indeed, regardless of whether these notions were "widely understood" (and with all corresponding evidentiary considerations), it remains that the Franchisee Commitment is clear and unambiguous. Thus, in the context of these proceedings, Defendants' subjective understanding of that agreement is not pertinent to its construction.

In an effort to manufacture ambiguity, Defendants effectively misquote the Franchisee Commitment. Defendants suggest that franchisees were "given broad discretion **'without limitation'** under Section 3.2 and 4.2 to use the first disbursement to keep their restaurant in good condition and repair for the purpose of staying in compliance with the Franchise Agreements." (Id. at 5 (emphasis in original)). That quote, however, excludes critical language that establishes the passage's plain meaning.

In its entirety, Section 3.2 of the Franchisee Commitment (which is incorporated by section 4.2) reads:

> The Franchisees hereby acknowledge and agree that they are obligated to maintain their Restaurants in good condition and repair to the extent necessary to bring their Restaurants in good condition and repair to the extent necessary to bring their Restaurants into compliance with the Franchise Agreements, ***including, without limitation,*** painting their restaurant buildings, resealing and restriping restaurant parking lots, upgrading restaurant landscaping, and that doing so is in the best interests of the Franchisees and the Burger King System.

(DE 61, Ex. A., at § 3.2) (emphasis added). It is clear from the plain language of this provision that the phrase "without limitation" serves, redundantly, to modify the word "including."

Defendants' mischaracterization of Section 3.2 is misleading because it implies Defendants could use their own, unfettered judgment when spending trust-fund disbursements. However, as the Franchisee Commitment makes clear, Defendants were required to meet certain deadlines and implement certain improvements. Failing to meet those deadlines and implement the improvements

-3-

as set forth in the Franchisee Commitment constitutes a default under the plan language of the Franchisee Commitment. (DE 61, Ex. A, at § 7.1).

### 2. The Franchisee Commitment Establishes Alternative Default Events

Section 7 of the Franchisee Commitment defines "default." (DE 61, Ex. A. at § 7.1). It provides, in part, that "the failure to implement . . . [Burger King's] Drive-Thru 2000 Package by December 31, 2001 shall constitute an act of default under . . . this Commitment." (Id.) That deadline was later extended to December 31, 2002. (See Dep. of Craig Prusher at 9:20-21, DE 74 Ex. C). The Commitment also provides that franchisees will be in default should they fail to timely install certain signage, or, should they fail to timely complete certain appearance upgrades. (Id.) As provided by the plain language of the Franchisee Commitment, *any one of these failures* constitutes a default event.

### 3. It Is Undisputed that Defendants Did Not Implement Burger King's Drive-Thru 2000 Package on *Any* of Their Stores and did not Perform all Work as Required by the Franchisee Commitment

It is undisputed that Defendants did not implement Burger King's Drive-Thru 2000 Package *on any* of their stores. (Michael Hinton Dep. 6:3, DE 64). Indeed, Defendants admitted that they did not perform all work as required by the Franchisee Commitment although they were obligated to do so. (James Hinton Dep. 30:2-18, DE 66). On this basis alone, Defendants defaulted under the Franchisee Commitment.

### 4. It is Irrelevant That Defendants May Have Partially Complied With Other Requirements Set Forth in the Franchisee Commitment

To avoid summary judgment, Defendants argue that they "properly used the Coke Funds on several of their restaurants for the purposes of repainting, restriping and landscaping." (DE 74 at 5). Even if that is true, it remains that Citibank is entitled to summary judgment. This is because

Defendants admit that they failed to timely install the appropriate drive-thru technology at any of their restaurants. On this basis alone Defendants defaulted on the Franchisee Commitment. The plain language of the Franchisee Commitment sets forth that the Trust is entitled to recover the entire Payment Amount paid to the Franchisee in the event of a default. (DE 61., Ex. A at § 7.1). Thus, Citibank is entitled to summary judgment.

Assuming, arguendo, Defendants complied with *some* (but not all) of the requirements set forth in the Franchisee Commitment, it still remains that they were in default as they have admitted. Again, the Franchisee Commitment plainly establishes default events; a failure to comply with any of these requirements constitutes a default, and Citibank is entitled to summary judgment.

### 5. The Franchisee Commitment Expressly Authorizes Citibank, As Trustee, to Recover the Payment Amount in the Event of a Default

The Franchisee Commitment clearly states that in the event of a default, "the Trustee may seek to recover the Payment Amount paid to the Franchisees with respect to the Restaurants." (DE 61, Ex. A., at § 7.1.) Based on Citibank's express authority to bring this lawsuit, it is antithetical to the plain language of the agreement to suggest that somehow, only Burger King Corporation ("BKC") could initiate these proceedings.[1]

Following the closure of Defendants' restaurants, Citibank, as Trustee, notified Defendants that their failure to utilize soda trust funds as required by the Franchisee Commitments constituted a default. (See DE 61 at Ex. "C"). Citibank demanded that Defendants return the trust funds to

---

[1] Defendants argue that Citibank itself has not been damaged and therefore cannot recover for breach of the Franchisee Commitment. However, it is settled Florida law that it is the duty of a trustee to protect the funds of a trust. Cone v. State ex rel. Women's Benefit Ass'n of Port Huron, Mich., 199 So. 43 (Fla. 1940). Thus, pursuant to Florida law and the Franchisee Commitment, Citibank as Trustee is a proper party to bring this action on behalf of the Trust.

Citibank for redistribution to other beneficiaries. (See James Hinton Dep. at 34:11, 37:3-5, 8; DE 66, DE 61 Ex. "C"). By doing so, Citibank fulfilled all conditions precedent to this lawsuit.

Indeed, Defendants admit they did not return the subject funds. (Id. at 37:8). As a result of the foregoing, Citibank, as Trustee, is clearly entitled to bring this lawsuit, and correspondingly, recover the subject Payment Amount.

### 6. The Franchisee Commitment Does Not Permit the Unauthorized Use of Trust Proceeds in the Event a Franchisee is Terminated from the Burger King System

Defendants argue that "[i]t was BKC's termination of Defendants' Franchise Agreements, and only BKC's termination of the Franchise Agreements which precluded Defendants from performing any further work on the restaurants." (DE 74 at 8) (citation omitted). That allegation, however, is not pertinent.

Even if BKC, arguendo, *did* cause Defendants to default on the Franchisee Commitment, it remains that Defendants are not excused from their immediate default. In fact, in a case relied on by Defendants — Burger King Corp. v. Hinton, 203 F. Supp. 1357 (S.D. Fla. 2002) — this court, ruled, in the context of the same concomitant franchise dispute referred to in this litigation, that the *Defendants* "'committed a breach of contract by failing to remit payments [to BKC].'" Hinton, 203 F. Supp. at 1366.[2] Indeed, that further weakens Defendants' unsupported argument that BKC's

---

[2]Defendants' reliance on this case is all the more curious because it is wholly inapposite to these proceedings. In Hinton, the Court awarded BKC its past due royalties and rents resulting from Defendants' breach of their Franchise Agreement. The Court simply denied BKC's prayer for future lost profits (incident to a breach of franchise agreement) because, according to the Court, BKC did not "demonstrate[] that its total requested award of lost profits resulted from Defendants' breach." Hinton, 203 F. Supp. 2d at 1366. In this lawsuit, Citibank's cause of action (and corresponding entitlement to relief) derives from the fact that Defendants defaulted on the immediate Franchisee Commitment. To reiterate a point made earlier, the Franchisee Commitment clearly states that in the event of a default, "the Trustee may seek to recover the Payment Amount paid to the Franchisees with respect to the Restaurants."

GENOVESE JOBLOVE & BATTISTA, P.A. Attorneys at Law

actions permit them to retain the benefit of the trust proceeds. Cf. Iervolino v. Best Built Homes Holding Corp., 288 N.Y.S.2d 724, 727 (N.Y. App. Div. 1968) ("No principle of equity known to me would permit . . . default of one agreement because of proper enforcement of another and unrelated agreement or right . . . excuse on the grounds of impossibility the performance of that which a contracting party has already failed to perform.") (citations omitted).

If anything, Defendants' departure from the Burger King franchise system militates in favor of Citibank's motion for summary judgment. Defendants themselves admit they "were unable to complete certain projects as a direct result of BKC's termination of their franchise agreements." But Defendants are not entitled to enjoy the subject trust-fund disbursements because they could not perform their obligations under the Franchisee Commitment. Cf., e.g., McGowin Lumber & Export Co. v. Camp Lumber Co., 77 So. 433, 436 (Ala. Ct. App. 1917) ("As a general rule, it is settled that where one party is unable to perform his part of the contract, he is not entitled to demand the performance of the contract by the other party.") (citations omitted)  If Defendants wish to seek redress against for their alleged injury, they may certainly do so in another proceeding.[3]

## III.   CONCLUSION

For all of the foregoing reasons, this Court should enter summary judgment in Citibank's favor on Citibank's Motion for Summary Judgment, and reserve jurisdiction to award it attorneys' fees, costs and such other relief as may be appropriate.

---

(DE 61, Ex. A at § 7.1).

[3] In fact, Defendants filed counterclaims against BKC for their alleged injuries in Hinton, 203 F. Supp. 2d 1357 (S.D. Fla. 2002), and Burger King Corp. v. Rob-Hin, Inc., No. 01-3518-CIV-Gold. As stated previously, Judge Moore in Hinton entered summary judgment in favor of BKC holding that BKC had properly terminated defendants' Franchise Agreements in South Carolina. The same question is currently being decided regarding the Texas Franchise Agreements on a motion for summary judgment in Rob-Hin.

WHEREFORE, Citibank, N.A., as Trustee, respectfully requests that this Court enter summary judgment in Citibank's favor on Citibank's Motion for Summary Judgment, and reserve jurisdiction to award it attorneys' fees, costs and such other relief as may be appropriate.

Respectfully submitted,

**GENOVESE , JOBLOVE & BATTISTA, P.A.**
Attorneys for Citibank, N.A., as Trustee
100 Southeast Second Street, 36th Floor
Miami, Florida 33131
Telephone:     (305) 349-2300
Facsimile:      (305) 349-2310

By: _____
Michael D. Joblove
Florida Bar Number 354147
Nina Greene Kersh
Florida Bar Number 072079
Michael G. Moore
Florida Bar Number 019522

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY THAT a true and correct copy of the foregoing was served by United States mail this 14th day of January, 2003, upon Robert M. Einhorn, Esq., Zarco Salkowski & Einhorn, 100 Southeast Second Street, 27th Floor, Miami, Florida 33131.

_____
Of Counsel

X:\Documents\Work\A to D\BK\Hinton\Pleadings Citibank\Reply Memo Summary Judgment .wpd